1

2

3

4             UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    SALVADOR VARGAS,                          Case No.  15-cv-03408-JST

            Plaintiff,
8                                              **ORDER GRANTING DEFENDANT'S**
                                               **MOTION TO COMPEL ARBITRATION**
9        v.
                                               Re: ECF Nos. 19, 20
     DELIVERY OUTSOURCING, LLC, et al.,
10
            Defendants.
11

12          Before the Court is Defendant Delivery Outsourcing, LLC's Motion to Compel Arbitration

13   and Stay Proceedings.[1]  ECF No. 19.  For the reasons set forth below, the Court will grant the

14   motion.

15   **I.     BACKGROUND**

16          **A.     Parties and Claims**

17          Defendant Delivery Outsourcing, LLC ("DO"), a Florida-based limited liability company,

18   contracts with businesses and individuals to deliver delayed luggage to airline passengers.  ECF

19   No. 19-1; ECF No. 1-1 ¶ 6.  Defendant Luggage Services and Logistics, LLC ("LSL") is a Florida

20   limited liability company and Defendant Bags, Inc. ("Bags") is a Florida corporation.  ECF No. 1-

21   1 ¶¶ 7–8.  On or around July 16, 2012, Plaintiff Salvador Vargas ("Plaintiff") entered into an

22   Owner/Operator Agreement with DO to deliver delayed bags and luggage to air travelers in the

23   Bay Area.  See ECF No. 19-3, Merriam Decl., Ex. A (the Agreement).  Plaintiff, a California

24   resident, worked as a luggage delivery driver from July 2012 to May 2014.  ECF No. 1-1 ¶ 13.  He

25   was paid for each delivery made and used his own vehicle to deliver luggage for Defendants.  Id.

26   ¶¶ 15–16.  On May 16, 2014, Defendants terminated Plaintiff's employment.  Id. ¶ 36.

27   _____

28   [1] Defendants Luggage Services and Logistics, LLC and Bags, Inc. jointly move to join in the
     motion to compel arbitration.  ECF No. 20.  That motion is granted.

1    On May 15, 2015, Plaintiff filed a complaint in San Mateo Superior Court alleging that

2    Defendants misclassified him as an independent contractor, thereby depriving him of the rights

3    guaranteed to employees under California law.  ECF No. 1-1 ¶¶ 14–38.  He also alleges that while

4    employed with Defendants, he faced workplace discrimination due to his age and race or national

5    origin.  Plaintiff identifies as Latino and was approximately 70 years old at the time the alleged

6    discrimination took place.  Id. ¶¶ 30–35.  Plaintiff contends he was wrongfully terminated on

7    account of his age, race, and/or national origin.  Id. ¶ 114.  Plaintiff brings eleven claims for

8    Defendants' failure to pay minimum wage pay, pay all hours worked, pay overtime compensation,

9    permit rest periods, permit meal periods, reimburse business expenses, and furnish accurate wage

10   statements; waiting time penalties; unfair competition; discrimination; and wrongful termination.

11   See generally ECF No. 1-1.  Plaintiff seeks damages, restitution, waiting time penalties, costs, and

12   attorneys' fees.  Id. at 15–16.[2]

13   On July 23, 2015, Defendant DO removed this action to this Court pursuant to 28 U.S.C.

14   §§ 1441 and 1446.  ECF No. 1.

15   **B.      Arbitration Provision**

16   In support of its motion to compel arbitration, DO attaches Plaintiff's Owner/Operator

17   Agreement.  See ECF No. 19-3, Decl. of Jessica Merriam ("Merriam Decl."), Ex. A.  The

18   Agreement is seven-pages long and printed in small type.  Plaintiff signed and dated the

19   Agreement, but DO did not.  The sixth page is a fill-in-the-blank form where Plaintiff provided

20   information about his vehicle, automobile insurance, and driver's license.  See id. at 9.  The last

21   page is titled "Owner/Operator List of Understandings," which lists fifteen statements with

22   Plaintiff's initials next to each statement.  Id. at 10.  A question is posed at the top of the list:

23   "Before reading this document, can you read and speak English?"  Id.  Neither "yes" nor "no" is

24   circled.  Id.

25   Section 14, the provision on governing law, venue, and jurisdiction, appears on the fourth

26   and fifth pages of the Owner/Operator Agreement.  See id. at 7–8.  The provision defines

27

28   _____
     [2] Citations are to the pages assigned by the Court's electronic case filing system and not to the
     internal pagination of the document.

1    "disputes" as "[a]ny and all disputes which may arise or pertain in any way to this

2    Agreement . . . ."  Id. at 7.  It also requires that disputes be submitted on an individual basis to

3    final and binding private arbitration administered by the American Arbitration Association

4    ("AAA") using AAA's Rules for Commercial Arbitration.  The section further includes a

5    delegation clause stating that "[w]hether a dispute is arbitral shall be determined by the arbitrator."

6    Id.  However, the section also discloses that "[i]f any provision of this Agreement or portion

7    thereof is held to be unenforceable by a court of law or equity, said provision or portion thereof

8    shall not prejudice the enforceability of any other provision or portion of the same provision . . . ."

9    Id.

10       Section 14 also contains a choice of law provision requiring the application of Florida law.

11   Id.  Finally, the Agreement requires that arbitration take place in Orlando, Florida, and actions to

12   enforce or vacate the arbitral award also take place in Orlando, Florida.  Id. at 7–8.

13       **C.      Motion to Compel Arbitration**

14       On December 22, 2015, DO filed its motion to compel arbitration of Plaintiff's claims and

15   stay further judicial proceedings pending completion of arbitration.  ECF No. 19.  Defendants LSL

16   and Bags moved to join in DO's motion to compel arbitration.  ECF No. 20.

17       On January 21, 2016, Plaintiff filed his opposition to the motion, arguing that the Federal

18   Arbitration Act ("FAA") does not apply to the agreement and that the arbitration agreement is

19   unconscionable and unenforceable.  ECF No. 24.

20       After reviewing Defendant's motion and Plaintiff's opposition, the Court ordered both

21   parties to provide the Court with supplemental briefing on whether Plaintiff is an interstate

22   transportation worker under Section 1 of the FAA.  ECF No. 25.

23       On February 11, 2016, DO filed its reply in support of the motion contending that Section

24   1 does not apply to the agreement.  ECF No. 26.

25       On February 18, 2016, Plaintiff filed his sur-reply.  ECF No. 27.

26       The Court heard oral argument on March 10, 2016.  ECF No. 28.

27       **D.      Jurisdiction**

28       The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

**II.      REQUEST FOR JUDICIAL NOTICE**

The Court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

In support of its motion to compel arbitration, DO requests that the Court take judicial notice of: (1) the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures; and (2) the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures. ECF No. 19-4. Plaintiff does not oppose the request.

Because AAA's arbitration rules can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, the Court will take judicial notice.

**III.     LEGAL STANDARD**

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citations omitted).

On a motion to compel arbitration, the court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration. Id. § 3.

## IV.   DISCUSSION

### A.   FAA Exemption for Transportation Workers Engaged in Interstate Commerce

The FAA extends to all contracts "evidencing a transaction involving commerce," or arising from a "maritime transaction."  9 U.S.C. § 2.  However, under Section 1 of the FAA, an exemption to the FAA exists for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1; see also Circuit City, 532 U.S. at 112.

A district court must first "assess whether a Section 1 exemption applies before ordering arbitration."  In re Van Dusen, 654 F.3d 838, 845 (9th Cir. 2011). A plaintiff opposing arbitration under the FAA has "the burden of demonstrating the exemption."  Cilluffo v. Central Refrigerated Services, Inc., No. EDCV 12-00886 (VAP), 2012 WL 8523507, at *3 (C.D. Cal. Sept. 24, 2012), order clarified, No. EDCV 12-00886 VAP, 2012 WL 8523474 (C.D. Cal. Nov. 8, 2012) (citing Rogers v. Royal Caribbean Cruise Line, 547 F.3d 1148, 1151 (9th Cir. 2008)).

Plaintiff contends that he falls within the Section 1 FAA exemption because he occasionally delivered luggage to Nevada as an employee to DO.  ECF No. 24 at 7–8.  To claim the Section1 exemption Plaintiff must demonstrate that he is (1) an employee (2) engaged in interstate commerce.  The Court turns first to the question of whether Plaintiff was "engaged in interstate commerce."

Transportation workers are "workers actually engaged in the movement of goods in interstate commerce."  Circuit City, 532 U.S. at 112.  In Circuit City, the Supreme Court applied Section 1 narrowly and distinguished the limited reach of the phrase "engaged in commerce," which covers "only persons or activities within the flow of interstate commerce," from the terms "affecting commerce" or "involving commerce."  Id. at 118.  The Court noted that the latter terms refer to "Congress' intent to regulate to the outer limits of its authority under the Commerce Clause."  Id. at 115.

Section 1's exemption was intended to reach workers who would, by virtue of a strike, "interrupt the free flow of goods to third parties in the same way that a seamen's strike or railroad

employee's strike would." Veliz v. Cintas Corp., No. C 03-1180 (SBA), 2004 WL 2452851 at *3 (N.D. Cal. Apr. 5, 2004). "The most obvious case where a plaintiff falls under the FAA exemption is where the plaintiff directly transports goods in interstate, such as interstate truck driver whose primary function is to deliver mailing packages from one state into another." Id. at *5; see also Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 482–83 (S.D.N.Y. 2008) ("If there is one area of clear common ground among the federal courts to address this question, it is that truck drivers—that is, drivers actually involved in the interstate transportation of physical goods—have been found to be "transportation workers" for purposes of the residuary exemption in Section 1 of the FAA.").

Plaintiff contends that he engaged in interstate commerce because he delivered delayed luggage to airline passengers in California and Nevada. ECF No. 24 at 7; ECF No. 24-1, Vargas Decl. ¶ 2. DO counters that Plaintiff did not transport commercial goods and that Plaintiff did not deliver luggage outside of California. ECF No. 26 at 15. In support of this contention, DO produced delivery records that show Plaintiff only delivered luggage in California. ECF No. 26-2, Mecca Supp. Decl., Ex. A. Plaintiff responds that "the Court should not be persuaded" by this evidence because DO "failed to demonstrate that [the] records are complete and accurate." ECF No. 27 at 9.

Delivery drivers may fall within the exemption for "transportation workers" even if they make interstate deliveries only "occasionally." See International Broth. Of Teamsters Local Union No. 50 v. Kienstra Precast, LLC, 702 F.3d 954, 957 (7th Cir. 2012). In International Brotherhood, the Seventh Circuit concluded that even where interstate deliveries were a small proportion of trucker drivers' total workload, the drivers engaged in interstate commerce. Id. at 958. There, the truckers estimated making a few dozen interstate deliveries out of 1500 to 1750 deliveries each year. Id.

The evidence in this case, however, does not support the conclusion that Plaintiffs made interstate deliveries even occasionally. DO submitted Plaintiff's Baggage Delivery Order ("BDO") data from the time he worked with Defendants. See ECF No. 26-2, Mecca Supp. Decl., Ex. A. The BDO records show that Plaintiff delivered luggage only in California. Plaintiff and

his former supervisor, Omar Vargas,[3] have submitted declarations in opposition to Defendants' motion, but Plaintiff states only that "his *duties* included driving from Defendants' warehouse in Burlingame, California to different locations in California and Nevada to deliver delayed luggage to airline passengers," ECF No. 24-1 at 2 (emphasis added), not that he ever actually *made* any deliveries to Nevada. His supervisor, Omar Vargas, states generally that "Salvador Vargas was assigned and performed deliveries in California and Nevada," ECF No. 27-2 at 2, but does so in a declaration that was filed improperly with Plaintiff's sur-reply, such that it is not properly before the Court. "A district court may refuse to consider new evidence submitted for the first time in a reply if the evidence should have been presented with the opening brief." Wallace v. Countrywide Home Loans, Inc., No. SACV 08-1463 AG MLGX, 2009 WL 4349534, at *7 (C.D. Cal. Nov. 23, 2009). Moreover, even considered on its merits, Omar Vargas' declaration is not persuasive. He fails to provide any information regarding the frequency with which Salvador Vargas travelled to Nevada, or any details of even a single delivery he made there. See ECF No. 27-2 ¶ 8. These two declarations do not rebut the very specific and credible evidence that Plaintiff never travelled to Nevada.

Plaintiff next responds that even if the deliveries occurred solely intrastate, it "does not make that portion of the trip any less interstate in character." ECF No. 27 at 9 (citing to United States v. Yellow Cab Co., 332 U.S. 218, 228 (1947). Plaintiff argues that there is continuity of movement between the interstate travel of the luggage and other items, including wheelchairs and ski equipment, to the intrastate deliveries made by Plaintiff. Id.

The cases cited by Plaintiff in support of this proposition refer to provisions of the Sherman Antitrust Act and the Fair Labor Standards Act ("FLSA"), not Section 1 of the FAA. The Sherman Act and the FLSA are both construed broadly. Yellow Cab, 332 U.S. at 226 ("The Sherman Act is concerned with more than the large, nation-wide obstacles in the channels of interstate trade. It is designed to sweep away all appreciable obstructions so that the statutory policy of free trade might be effectively achieved."); Chao, 214 F. Supp. 2d at 1269 ("Because the

---

[3] Omar Vargas is also Plaintiff's son. ECF No. 27 at 4 n.1.

United States District Court
Northern District of California

FLSA is remedial, it is to be broadly construed."). Section 1 of the FAA, by contrast, has consistently been construed narrowly. In Circuit City, for example, the Court considered whether a Circuit City employee who was a sales counselor in a store in Santa Rosa, California fell with the § 1 exemption. 532 U.S. at 110. The Court concluded he did not, noting that "[m]ost Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce." Id. at 112 (contrasting Section 2 of the FAA, which involves any contract evidencing a transaction involving commerce, with Section 1 of the FAA, which is limited to transportation workers actually engaged in interstate commerce).

Under the appropriate, narrower construction, Plaintiff has not shown that the intrastate delivery of luggage is an activity "within the flow of interstate commerce." Id. at 117. Other courts have held that local delivery drivers do not fall within the interstate transportation worker exemption. See, e.g., Hill v. Rent-A-Center, Inc., 398 F.3d 1286, 1289–90 (11th Cir. 2005) (distinguishing between a transportation worker engaged in interstate commerce and the "activities of . . . a pizza delivery person who delivered pizza across a state line to a customer in a neighboring town"); Levin v. Caviar, Inc., No. 15-CV-01285-EDL, 2015 WL 7529649 (N.D. Cal. Nov. 16, 2015); Veliz, 2004 WL 2452851 at *3. This Court holds likewise.

"Courts also look to 'whether a strike by the category of workers at issue would interrupt interstate commerce' in determining whether a worker falls within the FAA exemption." Levin, 2015 WL 7529649, at *4 (quoting Lenz v. Yellow Transp., Inc., 431 F.3d 348, 352 (8th Cir. 2005)). In this case, a strike by luggage delivery drivers such as Plaintiff would not have the same impact as the interruption of the "free flow of goods to third parties" that a "seamen's strike or railroad employee's strike would." Veliz, 2004 WL 2452851 at *10.

Plaintiff's argument that he is "engaged in interstate commerce" asks the Court to broadly read a term that requires a narrow construction. The Court declines the invitation, and concludes that Plaintiff was not engaged in interstate commerce.[4]

---

[4] Because the Court concludes that Plaintiff was not engaged in interstate commerce, it does not reach the question of whether Plaintiff was an employee.

United States District Court
Northern District of California

1    Because Plaintiff is not subject to the Section 1 exemption, the Court applies the FAA.

2    **B.**       **Validity of the Agreement to Arbitrate**

3    Although the FAA expresses "a liberal federal policy favoring arbitration agreements," that

4 policy is best understood as concerning "the scope of arbitrable issues." Moses H. Cone Mem'l

5 Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). This liberal policy does not apply to

6 the determination of whether a particular party is bound by the arbitration agreement. Comer v.

7 Micor, Inc., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). When deciding whether a valid arbitration

8 agreement exists, federal courts "apply ordinary state-law principles that govern the formation of

9 contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "[T]he party

10 resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

11 arbitration." Green Tree Fin. Corp. Alabama v. Randolph, 531 U.S. 79, 91 (2000).

12    Plaintiff argues that the arbitration agreement is not binding on either Plaintiff or DO

13 because the Owner/Operator Agreement was not signed by all parties. ECF No. 24 at 10. DO did

14 not sign the Owner/Operator Agreement and Plaintiff did not receive a copy of it. Id.

15    The law does not support this argument. "While the FAA authorizes the court to enforce

16 only written agreements to arbitration (9 U.S.C. § 3), it does not require the written agreements to

17 be signed." Ambler v. BT Americas Inc., 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013); Nghiem v.

18 NEC Elec., Inc., 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA requires a writing, it does

19 not require that the writing be signed by the parties.").

20    In this case, Plaintiff has not established that DO's signature was "contemplated as a

21 condition precedent to the validity of the contract." Fagelbaum & Heller LLP v. Smylie, 174 Cal.

22 App. 4th 1351, 1365 (2009) (internal quotations omitted). Further, Plaintiff does not dispute that

23 DO presented him with a copy of the Owner/Operator Agreement at the start of his employment,

24 and that he signed it. Plaintiff then proceeded to work for DO for nearly two years. The

25 agreement to arbitrate is a mutually binding agreement. See Serafin v. Balco Properties Ltd.,

26 LLC, 235 Cal. App. 4th 165, 177 (2015), review denied (June 10, 2015) ("Just as with any written

27 agreement signed by one party, an arbitration agreement can be specifically enforced against the

28 signing party regardless of whether the party seeking enforcement has also signed, provided that

United States District Court
Northern District of California

9

the party seeking enforcement has performed or offered to do so."); <u>Chico v. Hilton Worldwide,
Inc.</u>, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *7 (C.D. Cal. Oct. 7, 2014) (finding that
an employer who did not sign the arbitration agreement nonetheless manifested assent to the
agreement by presenting it to the plaintiff for execution, accepting the agreement, and then
employing the plaintiff).

### C.     Arbitrability

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the
parties have agreed to arbitrate or whether their agreement covers a particular controversy." <u>Rent-
A-Ctr., West, Inc. v. Jackson</u>, 561 U.S. at 63, 68–69 (2010).  "Just as the arbitrability of the merits
of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who
has the primary power to decide arbitrability' turns upon what the parties agreed about *that*
matter."  <u>Kaplan</u>, 514 U.S. at 943 (emphasis in original) (internal citations omitted).  Whether the
court or the arbitrator decides arbitrability is "an issue for judicial determination unless the parties
clearly and unmistakably provide otherwise."  <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S.
79, 83 (2002) (<u>quoting AT&T Techs., Inc. v. Commc'ns Workers of America</u>, 475 U.S. 643, 649
(1986)).  While the Court generally resolves ambiguities in arbitration agreements in favor of
arbitration, it resolves ambiguities as to the delegation of arbitrability in favor of court
adjudication.  <u>See Kaplan</u>, 514 U.S. at 944–45.

For arbitration agreements under the FAA, "the court is to make the arbitrability
determination by applying the federal substantive law of arbitrability absent clear and
unmistakable evidence that the parties agreed to apply non-federal arbitrability law." <u>Brennan v.
Opus Bank</u>, 796 F.3d 1125, 1129 (9th Cir. 2015).

### 1.     Express Language of the Delegation Clause

DO argues that the arbitrator, not the Court, must determine the validity of the parties'
agreement to arbitrate. ECF No. 19-1 at 5.  DO's first contention in support of this argument is
that the express language of the arbitration provision clearly and unmistakably delegates the
question of arbitrability.  <u>Id.</u> at 5.  The Owner/Operator Agreement provides that "any and all
disputes which may arise or pertain in any way" to the Agreement must be submitted to

arbitration.  ECF No. 19-3, Merriam Decl., Ex. A, at 7.  "Whether a dispute is arbitral shall be determined by the arbitrator."  Id.

The delegation clause itself does clearly state that the threshold question of arbitrability is to be delegated to the arbitrator.  Taken as a whole, however, the Agreement is ambiguous.  The very same paragraph also provides, "If any provision of this Agreement or portion thereof is held to be unenforceable *by a court of law or equity*, said provision or portion thereof shall not prejudice the enforceability of any other provision or portion of the same provision . . . ."  Id. (emphasis added).  This language is necessary only if questions concerning arbitrability are *not* resolved by the arbitrator.

Other courts analyzing similar conflicts as the one here – an unambiguous delegation clause contradicted by another provision of the contract – have declined to enforce the delegation clause.  See, e.g., Mohamed v. Uber Techs., Inc., 109 F. Supp. 3d 1185, 1199–2000 (N.D. Cal. 2015); O'Connor v. Uber Techs., Inc., No. 13-CV-03826-EMC, 2015 WL 8587879, at *4–5 (N.D. Cal. Dec. 10, 2015).  As the court in Ajamian v. CantorCO2e, L.P. explained, "[e]ven broad arbitration clauses that expressly delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard."  203 Cal. App. 4th 771, 792 (2012).  This is so because "[a]s a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the *court* might also find provisions in the contract unenforceable, there is not clear and unmistakable delegation of authority to the arbitrator."  Id. (emphasis in original) (citing Parada v. Superior Court, 176 Cal. App. 4th 1554, 1565–66 (2009)).

For example, in Mohamed v. Uber, the plaintiff drivers' contracts contained delegation clauses that, read in isolation, were unambiguous:  they stated that disputes related to the arbitration provision would be decided by the arbitrator without limitation.  109 F. Supp. 3d at 1199.  The same provision also stated, however, that a court, rather than arbitrator, would determine the validity of the arbitration provision's class, collective, and representative action waivers.  Id. at 1201–02.  The contracts further granted California state and federal courts

1    "exclusive jurisdiction" of "any disputes." Id. at 1201.  Based on these conflicts, the court

2    concluded that the language of the delegation clause was not "clear and unmistakable" and

3    declined to enforce it.  Id. at 1203.

4        Here, despite clear language delegating arbitrability to the arbitrator, the issue of

5    delegation is made ambiguous by the language of the arbitration provision that permits

6    modification of the Owner/Operator Agreement should "a court of law or equity" hold any

7    provision of the Agreement unenforceable.  The Agreement cannot be read as a providing a "clear

8    and unmistakable" delegation to arbitrator.  Judged on the language of the Owner/Operator

9    Agreement, the question of arbitrability is for the Court.  See Howsam, 537 U.S. at 83 ("Whether

10   the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is

11   an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.")

12   (internal citation and modifications omitted).

### 2.    Incorporation of AAA's Commercial Rules

14       DO also argues that the parties' intent to delegate arbitrability is confirmed by

15   incorporation of the AAA's Commercial Arbitration Rules in the Agreement.  See ECF No. 19-1

16   at 6; ECF No. 19-3, Merriam Decl., Ex. A at 7.  Within the AAA Commercial Rules, Rule 7(a)

17   delegates all jurisdictional questions, including arbitrability, to the arbitrator. The Rule states:

18   "The arbitrator shall have the power to rule on his or her own jurisdiction, including any

19   objections with respect to the existence, scope, or validity of the arbitration agreement or to the

20   arbitrability of any claim or counterclaim."  AAA Commercial Rule 7(a) (effective as of October

21   1, 2013).

22       Under some circumstances, incorporating the AAA rules into an agreement can evince a

23   "clear and unmistakable" intent to delegate.  In Brennan v. Opus Bank, the Ninth Circuit affirmed

24   a district court's finding that an employment agreement's express incorporation of the AAA rules,

25   as part of the arbitration provision, was clear and unmistakable evidence of the parties' intent to

26   submit the arbitrability dispute to arbitration. 796 F.3d at 1131. In so holding, the court recalled its

27   earlier observation in Oracle America, Inc. v. Myriad Group A.G., 724 F.3d 1069, 1074 (9th

28   Cir.2013) that "[v]irtually every circuit to have considered the issue has determined that

United States District Court
Northern District of California

12

United States District Court
Northern District of California

incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Id. at 1130.  But the Brennan court limited the holding to the facts of the case: an arbitration agreement between two sophisticated parties, one an experienced attorney and businessman and the other a regional financial institution.  Id. at 1131. Both Brennan and Oracle specifically left open the question of whether the same rule would apply when fewer than all the parties to an arbitration agreement were sophisticated.  Id.; Oracle, 724 F.3d at 1075 n.2.

The Court concludes that incorporation of AAA's rules does not evince a "clear and unmistakable" intent to delegate disputes involving unsophisticated employees.  See Aviles, 2015 WL 9810998, at *6; Loewen v. Lyft, Inc., No. 15-CV-01159-EDL, 2015 WL 5440729, at *6 (N.D. Cal. Sept. 15, 2015).  As this Court previously explained in another case, "an inquiry about whether the parties clearly and unmistakably delegated arbitrability by incorporation should first consider the position of those parties. . . . After all, the question is whether the language of an agreement provides "clear and unmistakable" evidence of delegation."  Meadows v. Dickey's Barbecue Restaurants Inc., No. 15-CV-02139-JST, 2015 WL 7015396, at *6 (N.D. Cal. Nov. 12, 2015).  To a large corporation (as in Oracle) or a sophisticated attorney (as in Brennan), it might be reasonable to conclude that incorporation of the rules clearly and unmistakably evinces an intent to delegate.  "But applied to an inexperienced individual, untrained in the law, such a conclusion is likely to be much less reasonable."  Id.

In this circumstance, the Court cannot conclude that the parties clearly and unmistakably intended to delegate the question of arbitrability to an arbitrator through reference to AAA's Commercial Rules.  Plaintiff – an unsophisticated luggage delivery driver – executed the Owner/Operator Agreement without an opportunity to review the documents or consult with an attorney, and the parties dispute Plaintiff's English language proficiency.  ECF No. 24-1, Vargas Decl. ¶¶ 3–12.  See Aviles, 2015 WL 9810998, at *6 (finding that "it would strain credulity to conclude" that the plaintiff driver evinced a clear and unmistakable intent to delegate arbitrability through incorporation of the JAMS rules into the agreement).

For the foregoing reasons, the Court determines that DO's arbitration provision fails to

provide clear and unmistakable evidence that the parties agreed to delegate arbitrability.  Because the purported delegation provision is ineffective, the Court need not reach the parties' remaining arguments regarding the delegation provision.  The Court now turns to Plaintiff's arguments about the unconscionability of the arbitration provision.

### D.      Unconscionability of the Arbitration Provision

The California Supreme Court[5] recently reiterated the test for unconscionability law in Sanchez v. Valencia Holding Co., LLC, 61 Cal. 4th 899 (2015), as follows:

> [Unconscionability] refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. Courts may find a contract as a whole or any clause of the contract to be unconscionable.

Id. at 910 (internal citations and quotation marks omitted). "Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." Id. at 911; see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012) ("[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability.").

Plaintiff argues that the delegation provision itself is unenforceable because it is both

---

[5] Although the Agreement contains a provision that Florida law will apply, both parties rely on California law in their unconscionability analysis.  See ECF No. 19-1 at 6–7; ECF No. 24.  The Court therefore does likewise.  See Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1267 (9th Cir. 2006) (applying California law "because the parties through their course of conduct have waived the provision of the agreement that specifies the application of Massachusetts law").

United States District Court
Northern District of California

procedurally and substantively unconscionable and that the Court, not an arbitrator, should decide the question of arbitrability.   ECF No. 24 at 21.

### 1.       Procedural Unconscionability

"Procedural unconscionability analysis focuses on oppression or surprise."  Nagrampa MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006) (internal quotation marks omitted). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them."  Id. (internal quotation marks omitted).

Plaintiff first argues that the arbitration provision is procedurally unconscionable because it was contained in a contract of adhesion.  ECF No. 24 at 11–14.  Plaintiff contends that the Owner/Operator Agreement is adhesive because it is a pre-printed, standardized contract, which was presented to Plaintiff on a take-it-or-leave-it manner with no opportunity to negotiate or reject it.  Id.

DO disputes that the Owner/Operator Agreement was a contract of adhesion.  ECF No. 26 at 18.  DO also argues that if the Court were to find that it was a contract adhesion, the Court should only find minimal procedural unconscionability because bargaining power was not grossly unequal and reasonable alternatives existed between the two parties.  Id. (citing Ruhe v. Masimo Corp., No.  SACV 11-0734-CJC, 2011 WL 4442790, at *3 (C.D. Cal. Sept. 16, 2011)).

Here, Plaintiff has shown that the arbitration provision is part of contract of adhesion. "Under California law, [a] contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms."  Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 983 (9th Cir. 2007) (quotations omitted).  Under California law, contracts of adhesion are procedurally unconscionable "to at least some degree." Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1004 (9th Cir. 2010).  The arbitration provision was part of a pre-printed contract drafted exclusively by DO and provided to Plaintiff as a prerequisite to his ability to work as a delivery driver.  DO gave Plaintiff only a few minutes "to quickly sign the documents without any time for questions or time to review the stack

of documents."  ECF No. 24-1, Vargas Decl. ¶ 12.  Plaintiff further states that he was not given the opportunity or power to negotiate any of the terms of the Agreement.  Id. ¶ 19.  Plaintiff also asserts that he was required to sign the documents before working for Defendants.  Id. ¶ 11.  Although Plaintiff does not offer evidence that he actually sought to negotiate the terms of the arbitration provision or the Agreement generally, Plaintiff does explain circumstances indicating that he would not have had a meaningful opportunity to negotiate these terms even if he had so requested.  The Court finds that the Agreement was adhesive.  See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 115 (2000) ("[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.")

Plaintiff next argues that the arbitration provision is procedurally unconscionable because the Agreement was not translated or explained to Plaintiff in Spanish although Plaintiff's native language is Spanish and he has limited English proficiency.  ECF No. 24 at 13; ECF No. 24-1, Vargas Decl. ¶ 3.  DO counters that this argument is a disingenuous because Plaintiff speaks English fluently and has resided in the United States for several decades.  ECF No. 26 at 18.  Plaintiff's level of proficiency with the English language, whatever it might be, does not alter the Court's unconscionability analysis.  Plaintiff does not allege that he informed DO that he did not understand the agreement or that DO said it would provide a Spanish translation.  While he claims that he did not have enough time to read the agreement, he does not claim that he was unable to understand it.  He also does not argue that DO exploited the asserted language barrier for its own benefit.  See, e.g., Molina v. Scandinavian Designs, Inc., No. 13-CV-04256 NC, 2014 WL 1615177, at *7 n.1 (N.D. Cal. Apr. 21, 2014) (finding that the plaintiff's limited English literacy did not add to the procedural unconscionability of the arbitration provision); IJL Dominicana S.A. v. It's Just Lunch Int'l, LLC, No. 08–cv–5417, 2009 WL 305187, at *3 n.1 (C.D. Cal. Feb. 6, 2009) (finding only minimal procedural unconscionability where the defendant did not provide the plaintiff a copy of contract in Spanish, since there was no evidence that the defendant promised to

United States District Court
Northern District of California

1   provide a Spanish translation or that the defendant tried to take advantage of language

2   differences).

3       Plaintiff also contends that the failure to provide a copy of the incorporated AAA

4   Commercial Rules adds to the finding of procedural unconscionability.  ECF No. 24 at 14.  In

5   Pokorny v. Quixtar, Inc., the Ninth Circuit held that the failure to attach the arbitration rules

6   denied the plaintiffs "a fair opportunity to review the full nature and extent of the non-binding

7   conciliation and binding arbitration processes to which they would be bound before they signed

8   the [agreements]." 601 F.3d at 996–97.  This failure "multipl[ies] the degree of procedural

9   unconscionability" discussed above.  Id.  DO's failure to attach the applicable rules of the AAA,

10  while not dispositive, also adds to the Agreement's procedural unconscionability.

11      The arbitration provision is part of a contract of adhesion offered to a person with little

12  bargaining power on a take-it-or-leave-it basis, and it incorporates the AAA rules without

13  attaching them.  The Court finds that there is some degree of procedural unconscionability.  See

14  id.  The Court next examines "the extent of substantive unconscionability to determine, whether

15  based on the California courts' sliding scale approach, the arbitration provision is

16  unconscionable."  Nagrampa, 469 F.3d at 1284.

17              **2.      Substantive Unconscionability**

18       "Substantive unconscionability pertains to the fairness of an agreement's actual terms and

19  to assessments of whether they are overly harsh or one-sided."  Pinnacle Museum Tower, 55 Cal.

20  4th at 246.  However, "[a] contract term is not substantively unconscionable when it merely gives

21  one side a greater benefit; rather, the term must be so one-sided as to shock the conscience."  Id.

22  (internal quotation marks omitted).  When assessing substantive unconscionability, "[m]utuality is

23  the 'paramount' consideration . . . ."  Pokorny, 601 F.3d at 997 (quoting Abramson v. Juniper

24  Networks, Inc., 115 Cal. App. 4th 638, 664 (2004)).

25      Plaintiff argues that the arbitration provision is substantively unconscionable because the

26  provision requires the parties to apply Florida law and arbitrate in Orlando, Florida.  ECF No. 24

27  at 17–18.  In response, DO first emphasizes that prior to filing the instant motion to compel

28  arbitration, DO offered to arbitrate Plaintiff's claims in San Francisco.  ECF No. 26 at 20–21.  DO

United States District Court
Northern District of California

1   also asserts that Plaintiff has not met his burden in demonstrating that the enforcement of the

2   choice of law and forum selection clauses is unreasonable.  Id. at 26.

3                           a.        Choice of Law

4        A choice of law clause may render an arbitration provision unconscionable if its operation

5   would deprive the plaintiff of statutorily protected rights, such as employment benefits.  Ajamian,

6   203 Cal. App. 4th at 798–99; see also Narayan v. EGL, Inc., 616 F.3d 895, 899 (2010).

7   "However, absent a reason to conclude that the choice of law provision would have such an effect,

8   the resolution of choice of law issues is for the arbitrator, not the Court, to decide."  Galen v.

9   Redfin Corp., No. 14-CV-05229-TEH, 2015 WL 7734137, at *10 (N.D. Cal. Dec. 1, 2015) (citing

10  Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 541 (1995)).

11       Plaintiff contends that by applying Florida law, Plaintiff will waive his statutory rights

12  under California's Labor Code and FEHA.  ECF No. 24 at 17.  DO counters that the choice of law

13  provision is not unconscionable because Plaintiff "would be free to argue before the arbitrator that,

14  in light of his statutory claims, California, not Florida, law should apply."  ECF No. 26 at 24.

15       Plaintiff has the better argument.  As Defendants do not dispute that the application of

16  Florida law will result in the loss of unwaivable rights under the California Labor Code, Plaintiff

17  has satisfied his burden of demonstrating that the choice of law clause in the arbitration provision

18  is unconscionable.  Flinn v. CEVA Logistics U.S., Inc., No. 13-CV-2375 W BLM, 2014 WL

19  4215359, at *10 (S.D. Cal. Aug. 25, 2014) (declining to enforce an arbitration provision

20  containing a Texas choice of law clause, the effect of which would be to "eliminate all of

21  [plaintiff's] California Labor Code protections").[6]

22                          b.        Forum Selection Clause

23       "[F]orum selection clauses are valid and should be given effect unless enforcement of the

24  clause would be unreasonable."  Intershop Commc'ns, AG v. Superior Court, 104 Cal. App. 4th

25  191, 196 (2002).  However, if the "place and manner" restrictions of a forum selection provision

26

27  [6] But see Antonelli v. Finish Line, Inc., No. 5:11-CV-03874 EJD, 2012 WL 525538, at *7 (N.D.
    Cal. Feb. 16, 2012) (enforcing arbitration clause and concluding that choice of law provision
28  "does not necessarily result in the application of Indiana substantive law, but only compels the
    application of Indiana's choice-of-law rules") (emphasis omitted).

1    are "unduly oppressive," see Bolter v. Superior Court, 87 Cal. App. 4th 900, 909–10, or have the

2    effect of shielding the stronger party from liability, see Comb v. PayPal, Inc., 218 F. Supp. 2d

3    1165, 1177 (N.D. Cal. 2002), then the forum selection provision is unconscionable.

4           As Plaintiff points out, under the Agreement, an arbitrator in Orlando, Florida must decide

5    challenges to the enforceability or validity of the arbitration agreement. See ECF No. 19-3 at 7.

6    Further, actions to enforce or vacate the arbitral award must also take place "in a court of

7    appropriate subject matter jurisdiction in Orlando, Florida." Id. Plaintiff asserts that this forum

8    selection clause is unconscionable as it would require him to arbitrate with DO across the country

9    from where the contract was executed or work performed. ECF No. 24 at 21. The Court agrees

10   with Plaintiff that the forum selection clause renders the arbitration provision substantively

11   unconscionable. Forcing Plaintiff, a luggage delivery driver, to challenge the arbitration

12   agreement thousands of miles from where he worked places a substantial barrier to Plaintiff

13   bringing his claims. See Nagrampa, 469 F.3d at 1285 (finding that the arbitral forum is designated

14   as Boston, Massachusetts lacked mutuality because it "is a location considerably more

15   advantageous to the [franchisor]"); Capili v. Finish Line, Inc., 116 F. Supp. 3d 1000, 1006-07

16   (N.D. Cal. 2015) (finding the provision of the employment agreement requiring that disputes be

17   submitted to arbitration in Indiana substantively unconscionable); Bolter, 87 Cal. App. 4th at 909

18   (finding that enforcement of the forum selection clause requiring claims to be arbitrated

19   exclusively in Utah would be cost prohibitive in light of fact that the potential claimants located

20   around the country would be required to retain counsel familiar with Utah law).

21          The Court finds that the arbitration provision is substantively unconscionable to the extent

22   it includes this forum selection clause.

23                         **3.    Severability**

24          A court has discretion to either sever an unconscionable provision from an agreement or

25   refuse to enforce the agreement in its entirety. Pokorny, 601 F.3d at 1005 (citation omitted).

26   California law allows the court to sever any unconscionable provisions so long as they are merely

27   collateral to the main purpose of the arbitration agreement. Armendariz, 24 Cal. 4th at 124. "In

28   exercising this discretion, courts look to whether the 'central purpose of the contract is tainted with

1    illegality' or 'the illegality is collateral to [its] main purpose.'" Ingle v. Circuit City Stores, Inc.,

2    328 F.3d 1165, 1180 (9th Cir. 2003).

3           The Court concludes that the choice of law clause and the forum selection clause are

4    "merely collateral" to the main purpose of the agreement and that the clauses can easily be severed

5    from the Agreement.  See Galen, 2015 WL 7734137, at *10 (N.D. Cal. Dec. 1, 2015) (concluding

6    that the forum selection and choice of law provisions were easily severable from the arbitration

7    agreement); Haisha Corp. v. Sprint Sols., Inc., No. 14CV2773-GPC MDD, 2015 WL 224407, at

8    *9–10 (S.D. Cal. Jan. 15, 2015) (severing the forum selection clause from the arbitration

9    agreement).  Further, DO is amenable to arbitrating in San Francisco, California.  See ECF No. 26

10   at 20, 26; ECF No. 19-2, Bogue Decl., Ex. A.  The Court, accordingly, severs the choice of law

11   and forum selection clauses from the arbitration provision.

12          Based on the findings that the arbitration provision contains some procedural

13   unconscionability but no substantive unconscionability, other than two clauses the Court severs

14   from the Agreement, the Court concludes that the arbitration provision is not unconscionable and

15   is enforceable.

16                                        **CONCLUSION**

17          For the reasons set forth above, the Court severs the choice of law and forum selection

18   clauses, grants the motion to compel arbitration, and stays these proceedings.[7]

19          The parties are instructed to submit a joint status report to the Court within ninety days of

20   the date this order is electronically filed, and additional joint status reports every ninety days

21   thereafter, apprising the Court of the status of the arbitration proceedings.  Upon completion of the

22   arbitration proceedings, the parties shall jointly submit to the Court, within fourteen days, a report

23   advising the Court of the outcome of the arbitration, and request that the case be dismissed or that

24

25   [7] Arbitration proceedings will be initiated in the Northern District of California. As directed by 9
     U.S.C. section 4, arbitration "shall be within the district in which the petition for an order directing
26   such arbitration is filed."  See also Textile Unlimited, Inc. v. A..BMH & Co., 240 F.3d 781, 785
     (9th Cir. 2001) ("[Section] 4 only confines the arbitration to the district in which the petition to
27   compel is filed."); Homestake Lead Co. of Missouri v. Doe Run Res. Corp., 282 F. Supp. 2d 1131,
     1144 (N.D. Cal. 2003) (ordering arbitration to take place in San Francisco, California).
28   Additionally, as discussed above, DO previously stipulated to arbitrating in San Francisco.  ECF
     No. 26 at 26.

United States District Court
Northern District of California

1    the case be reopened and a case management conference be scheduled.

2            IT IS SO ORDERED.

3    Dated: March 14, 2016

4

5    _____

6                    JON S. TIGAR
                United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28